# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MADRINAS BRANDS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-cv-01237-SEP |
| HORSESHOE BEVERAGE COMPANY LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM & ORDER

Before the Court is Defendants' Motion to Dismiss. Doc. [47]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted in part, and the case is transferred to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1406.

### BACKGROUND[1]

Headquartered in Hazelwood, Missouri, Plaintiff Madrinas Brands, LLC, creates and manufactures lines of ready-to-drink canned coffee beverages. Doc. [46] ¶ 32. In addition to manufacturing the beverages, Plaintiff also develops proprietary coffee beverage formulas and recipes to sell to retail customers. *Id.* ¶ 33. Defendant Trilliant Food and Nutrition LLC is a Wisconsin limited liability company with its principal place of business in Little Chute, Wisconsin, and Defendant Horseshoe Beverage Company LLC is a Wisconsin limited liability with its principal place of business in Neenah, Wisconsin. *Id.* ¶¶ 3, 4; Doc. [47-2] Ex. 1 (Sholtis Declaration) ¶¶ 3, 4.

In October 2018, Plaintiff and Defendant Horseshoe entered into a Beverage Production and Packaging Agreement (Agreement).[2] Docs. [46] ¶¶ 34-36; [47-2] Ex. 1 ¶ 13, Ex. A. Pursuant to the Agreement, Plaintiff developed recipes for coffee beverages and provided Defendants with raw materials to manufacture the beverages in aluminum cans and package the beverages in a "sleeve" containing the Madrinas logo on the can. Doc. [46] ¶¶ 34, 35.

---

[1] For purposes of this Motion, the Court assumes that the factual allegations in the Complaint are true. *See Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[2] Defendant Trilliant is not a party to the Agreement. Doc. [47-2] Ex. 1 ¶ 17.

1

Defendants were also responsible for performing quality control checks on the batches of beverages and for ensuring that the beverages were suitable for human consumption. *Id.* ¶ 36.

The parties dispute in which state—Missouri or Wisconsin—the Agreement between Madrinas and Horseshoe was executed. Docs. [47-1] at 3, 7; [48-1] ¶¶ 12-19 (Davis Declaration); [48] at 6. Neither party traveled to the other's location to execute the Agreement. Docs. [47-1] at 3; [48] at 5, 6. Instead, the parties negotiated the contract via email and telephone. *Id.* Plaintiff alleges that the parties sent drafts back and forth for several months before the final Agreement was executed. Doc. [48-1] ¶ 12-13. In February 2019, with negotiations nearing an end, Plaintiff signed the Agreement and sent it to Defendant Horseshoe to be countersigned. Docs. [47-2] Ex. 1 ¶ 16, Ex. B (showing Plaintiff's signature but not Horseshoe's). Upon review of the Agreement sent by Plaintiff, Horseshoe's CFO noticed that four dates were missing, including the date that the contract period would begin, when the contract term would end, the month by which Madrinas was required to provide Horseshoe with an annual forecast of goods to be manufactured, and the month by which Horseshoe would negotiate and agree on the forecast. Doc. [48-1] Ex. 1 ¶¶ 15, 16, Ex. C (Lonigro Email). Horseshoe's representative, Jeff Lonigro, then sent Plaintiff a signed version of the Agreement with proposed dates written next to the blank spots, and asked Plaintiff to indicate its acceptance of those dates by initialing next to them. Doc. [48-1] Ex. 1 ¶ 16, Ex. C.

Defendants contend that the Agreement was executed in Wisconsin when it counter-signed the Agreement to which Plaintiff had already affixed its signature. Doc. [47-1] at 7. Plaintiff argues that the four undecided dates were material to the Agreement, and thus the contract was not executed until it initialed next to the proposed dates, which happened in St. Louis County, Missouri, not Wisconsin. Doc. [48] at 6.

In April 2019—six months after the execution of the Agreement between Madrinas and Horseshoe—Plaintiff entered into a Supply Agreement with Defendant Trilliant, under which Trilliant would produce single-serve cups of coffee to Plaintiff. Doc. [47-2] Ex. 1 ¶ 20, Ex. C (Trilliant Agreement). Shortly thereafter, in the summer of 2019, Defendants defectively manufactured and packaged approximately 6,500 cases of Madrinas coffee. *Id.* ¶ 38. The manufacturing defect was allegedly harmful to consumers because the packaging on the can was misplaced such that consumers were cut or otherwise injured. *Id.* ¶¶ 38, 39. As a result, the defective batches were removed from sale and destroyed to prevent further harm to consumers.

*Id.* ¶ 42.  In an effort to salvage the business relationship following the alleged defective manufacturing, Plaintiff offered to transfer to Defendants its entire line of business of private-label coffee products for a certain convenience store with hundreds of locations.  *Id.* ¶ 46.  Plaintiff believed it would receive favorable terms in exchange for the business but did not.  *Id.* ¶ 47.  Plaintiff claims that Defendants are now profiting from the exchange without providing compensation to Plaintiff.  *Id.* ¶ 48.  Plaintiff also claims that it requested that Defendants use or purchase its raw materials that were previously earmarked for use as ingredients for the private label, but Defendants refused.  *Id.* ¶¶ 49, 50.

Plaintiff's Amended Complaint alleges that Defendants breached the Beverage Production and Packaging Agreement.  *Id.* ¶¶ 53-61.  Plaintiff also alleges that Defendants have been unjustly enriched by defectively manufacturing the coffee and by receiving raw material paid for by Plaintiff.  *Id.* ¶¶ 62-70.

## LEGAL STANDARD

When a defendant challenges personal jurisdiction, the plaintiff must make a prima facie showing that jurisdiction exists.  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K-V Pharm v. J. Uriach & CIA, S.A.*, 648 F.3d at 592 (8th Cir. 2011)).  That showing is made "by pleading sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the [forum].'"  *K-V Pharm.*, 648 F.3d at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  A plaintiff's prima facie showing is tested, "not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion."  *Id.* (quotation marks omitted).  While the party seeking to establish jurisdiction carries the burden, the Court views the evidence in the light most favorable to the nonmoving party and resolves factual conflicts in its favor.  *Fastpath*, 760 F.3d at 820.

## DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing that Plaintiff fails to establish personal jurisdiction over them and also states no claim upon which relief may be granted.  Doc. [47-1] at 1.  Because the Court finds Rule 12(b)(2) to be dispositive, it does not reach the parties' Rule 12(b)(6) arguments in this Memorandum.

I.      **The Court does not have personal jurisdiction over Defendants.**

A federal court may exercise personal jurisdiction over a nonresident defendant in a diversity case only if (1) authorized by the forum state's long-arm statute and (2) permitted by the Due Process Clause of the Fourteenth Amendment. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). "The requirements of personal jurisdiction 'must be met as to each defendant.'" *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 696 (Mo. Ct. App. 2020) (citing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1783 (2017)). Plaintiff bears the burden of proof for establishing personal jurisdiction. *Casework, Inc. v. Hardwood Associates, Inc.,* 466 S.W.3d. 622, 626 (Mo. Ct. App. 2015).

    **A. Plaintiff has not established personal jurisdiction over Defendant Horseshoe Beverage Company, LLC.**

Missouri's long-arm statute allows the Court to exercise jurisdiction over "any cause of action arising from . . . [t]he making of any contract within [Missouri]." Mo. Rev. Stat. § 506.500.1(2). "For purposes of the long-arm statute, a contract is made where acceptance occurs." *Casework*, 466 S.W.3d at 626 (quoting *Strobehn v. Mason*, 397 S.W.3d 487, 498 (Mo. Ct. App. 2013)). Defendants contend that acceptance of the Agreement between Madrinas and Horseshoe occurred in Wisconsin, when Horseshoe signed the Agreement. Doc. [47-1] at 6-7. Plaintiff asserts that acceptance occurred in Missouri when it initialed the four additional dates. Doc. [48] at 5-6. Viewing the facts in the light most favorable to Plaintiff, the Court finds that the contract was accepted in Wisconsin. Therefore, there was no "making of [a] contract" in Missouri, and the Agreement does not provide a basis for jurisdiction under Missouri's long-arm statute. Mo. Rev. Stat. § 506.500.1(2).

"To constitute an offer sufficient to result in contract, the offer must be sufficiently specific on the terms of the contract so that, upon its acceptance, a court may enforce the contract so formed." *State ex rel. Career Aviation Sales, Inc. v. Cohen*, 952 S.W.3d 324, 326 (Mo. Ct. App. 1997) (citing *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346, 352 (Mo. Ct. App. 1983)). If, "after acceptance, the parties were under obligation to each other to make the performances promised, and neither could withdraw with impunity," then the contract may be enforced. *Id.*; *see also Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1054 (8th Cir. 2003) ("Under Missouri law, an agreement is actionable if it is specific enough to

4

determine when one of the parties is in breach and provides a basis for giving a remedy."). Here, whether the Agreement was accepted in Missouri or Wisconsin thus turns on whether the terms of the Agreement, as signed by Plaintiff and counter-signed by Defendant Horseshoe, were sufficiently defined such that "a court may enforce the contract" as it was written. *State ex rel. Career Aviation Sales, Inc.*, 952 S.W.3d at 326. Plaintiff argues that, without its consent as to the four missing dates, the "material terms [of the Agreement] were not agreed upon." Doc. [48] at 5. Thus, Plaintiff contends that Horseshoe's request that Plaintiff initial the proposed dates constituted an offer, which was accepted when its representative, Mr. Davis, initialed the Agreement. *Id.* at 6.

The Court disagrees. Only four dates were missing on one page of a 17-page Agreement. Doc. [47-2] Ex. A. Under Missouri law, even if some terms are "missing or left to be agreed upon," a contract is still enforceable if the "terms are sufficiently definite to enable the court to give them exact meaning." *Voyles v. Voyles*, 388 S.W.3d 169, 173 (Mo. Ct. App. 2012) (citing *Vulgamott v. Perry*, 154 S.W.3d 382, 390-91 (Mo. Ct. App. 2004)). The rest of the Agreement—other than the four missing dates—established the essential terms of the contract. Specifically, it included terms related to annual forecasts, production requests, beverage formulas, packaging requirements, procurement of materials and delivery, production and service fees, production yields, warranties, quality assurance, indemnification, insurance requirements, termination, of the Agreement, remedies, consent to jurisdiction, confidentiality requirements, and assignments, among other things. Doc. [47-2] Ex. A. While Plaintiff is correct that the dates are not inconsequential, their absence does not introduce so much ambiguity as to the rights and obligations of the parties under the Agreement that a court could not enforce them. *State ex rel. Career Aviation Sales, Inc.*, 952 S.W.3d at 326 (citing *Osage Homestead, Inc.*, 657 S.W.2d at 352).

Because the Agreement was formed in Wisconsin, Missouri's long-arm statute does not provide a basis for this Court to exercise personal jurisdiction over Defendant Horseshoe.[3]

---

[3] The Court is likewise not persuaded by Plaintiff's argument that the unrelated Non-Disclosure Agreement between Horseshoe and Plaintiff's parent company, Ricon, Inc., provides any basis for personal jurisdiction over Defendant Horseshoe. *See* Doc. [48] at 3-4. First, Madrinas is not a party to that Agreement—only its parent company, Ricon, Inc., is. Doc. [47-1] (citing Doc. [46] ¶¶ 13, 15-18). And even if Madrinas were a party to the NDA, the causes of action in this case (breach of contract and unjust enrichment) do not arise from the NDA. *See* Mo. Rev. Stat. § 506.500.1(2); *Rafferty v. Rafferty,*

Accordingly, the Court need not consider whether Defendant Horseshoe had sufficient minimum contacts with Missouri to satisfy the Due Process Clause. *Id.* at 327 (personal jurisdiction over a nonresident defendant requires satisfaction of *both* the long-arm statute *and* due process). Plaintiff's causes of action against Defendant Horseshoe must be dismissed under Rule 12(b)(2).

### B. Plaintiff has not established personal jurisdiction over Defendant Trilliant Food & Nutrition LLC.

"The requirements of personal jurisdiction 'must be met as to each defendant.'" *Ingham*, 608 S.W.3d at 696 (quoting *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783). Plaintiff bears the burden to make that showing "by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the [forum].'" *K-V Pharm.*, 648 F.3d at 592 (citing *Dever*, 380 F.3d at 1072). Plaintiff's pleading and accompanying materials do not provide any basis for asserting personal jurisdiction over Defendant Trilliant. The Amended Complaint does not allege anything related to Trilliant other than that it "is a limited liability company in good standing." Doc. [46] ¶ 4. Nor does Plaintiff's Complaint allege that Trilliant was a party to the Agreement that Defendants purportedly breached or that Trilliant's conduct in any other way satisfies the long-arm statute. *See* Doc. [46]. Likewise, Plaintiff's supporting documents, including its Memorandum in Opposition of Defendants' Motion to Dismiss and the declaration of Mr. Davis, provide no jurisdictional basis as to Trilliant. Neither one even discusses Trilliant. *See* Docs. [48]; [48-1]. Viewing the record in the light most favorable to Plaintiff, the Court finds no basis for asserting personal jurisdiction over Defendant Trilliant. Accordingly, Plaintiff's Amended Complaint must be dismissed as to Defendant Trilliant.

## II.     Additional jurisdictional discovery is not warranted.

Plaintiff argues that, in the alternative, additional discovery is necessary on the issue of personal jurisdiction. Doc. [48] at 10-11. Specifically, Plaintiff takes issue with Defendants' submission of Tim Sholtis's declaration. *Id.* Plaintiff notes that Mr. Sholtis, the CFO of

---

2016 WL 319593, at *2 (E.D. Mo. Jan. 27, 2016) ("In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act."). Plaintiff argues that the NDA is nevertheless relevant to the personal jurisdiction analysis because it demonstrates that it was foreseeable that Defendants may be haled into Court in Missouri, especially because the NDA contained a forum selection clause designating Missouri as the proper forum for disputes. Doc. [48-1] Ex. 1 ¶ 9, Ex. B. While foreseeability is relevant to the due process prong of specific personal jurisdiction, the long-arm statute must be satisfied first. *See Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc. 2010) (courts only evaluate whether a defendant's contacts with Missouri comport with due process after determining that the defendant's conduct satisfies Missouri's long-arm statute).

6

Horseshoe and Trilliant, purports to be familiar with the facts of the case and the formation and execution of the Agreement but was not actually involved in the negotiation or execution of the contract. *Id.* at 10. Therefore, Plaintiff requests that the Court permit limited discovery so that it may depose Mr. Sholtis and inquire about statements made in his declaration. *Id.* at 11.

Plaintiff does not dispute the facts underlying the Court's decision that personal jurisdiction is lacking (i.e., that the second signature occurred in Wisconsin and initialing of dates occurred thereafter in Missouri). Therefore, additional jurisdictional discovery would not alter the analysis of whether the Agreement was sufficiently defined such that a court could enforce it at the time Horseshoe signed it in Wisconsin. *See State ex rel. Career Aviation Sales, Inc.*, 952 S.W.3d at 326. Nor would it cure the defects in Plaintiff's pleadings as to Defendant Trilliant. Instead, as Defendants point out, the requested additional discovery would serve only to test the veracity of Mr. Sholtis's affidavit testimony. Doc. [49] at 9. Challenging the veracity of a declarant is not a sufficient reason to permit jurisdictional discovery. *Swinter Grp., Inc. of Process Agents, Inc.*, 2018 WL 1225112, at *2-3 (E.D. Mo. Mar. 7, 2018). Accordingly, Plaintiff's request for additional jurisdictional discovery is denied.

## Conclusion

Viewing the facts in the light most favorable to Plaintiff, it has not met its burden to establish personal jurisdiction over either Defendant. *Fastpath*, 760 F.3d at 820. Nor has it demonstrated that additional discovery would enable it to create a reasonable inference that either Defendant may be subjected to jurisdiction in this state. *K-V Pharm.*, 648 F.3d at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

Instead of dismissing the case for want of jurisdiction, however, the Court may transfer it pursuant to 28 U.S.C. § 1406(a). *Fleishman-Hillard, Inc. v. McCombs*, 2011 WL 5039809, at *5 (E.D. Mo. Oct. 24, 2011) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)); *Mayo Clinic v. Kaiser*, 383 F.2d 653, 654 (8th Cir. 1967). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Court's decision to transfer rather than dismiss a case is discretionary, but generally § 1406(a) is "construed wherever possible to remove procedural obstacles which would prevent expeditious and orderly adjudication of a case

7

on its merits." *Enter. Rent-A-Car Co. v. Stowell*, 137 F. Supp. 2d 1151, 159 (E.D. Mo. 2001) (citing *Goldlawr, Inc.*, 369 U.S. at 466).

It would be in the interest of justice to transfer this case in order to avoid the costs and delay associated with requiring Plaintiff to refile the case in the transferee district.[4] The Court therefore exercises its discretion pursuant to 28 U.S.C. § 1406(a) to transfer this case to the United States District Court for the Eastern District of Wisconsin, Green Bay Division.[5]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. [47]) is **GRANTED in part** and **DENIED in part.**  The Motion is granted to the extent it challenges this Court's personal jurisdiction over Defendants Horseshoe Beverage Company, LLC, and Trilliant Food and Nutrition LLC; however, Defendants' request for dismissal of the action is denied.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall **TRANSFER** this case to the United States District Court for the Eastern District of Wisconsin, Green Bay Division.

Dated this 18th day of March, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[4] Defendants argue that the Court should dismiss the case for two reasons:  (1) because Plaintiff had the opportunity to cure its jurisdictional defects and did not, thereby increasing the costs of the litigation and causing undue delay in the case, and (2) because Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).  Doc. [57] at 2-3.  First, on review of the filings, the Court does not find that Plaintiff has taken any action to intentionally cause delay in this case or to increase the cost of the litigation by filing suit in this Court.  Second, in the cases cited by Defendants in which the Court has dismissed a case for improper venue, rather than transferring it, the claims were either deficient on the face of the pleadings or were deemed frivolous.  *See Royal Continental Nubian Sudan Government v. J.G.Z.*, 2022 WL 522943, at *3 (E.D. Mo. Feb. 22, 2022) (Plaintiff was deemed "a frequent flier of frivolous litigation in both state and federal courts."); *El v. Woosley*, 2022 WL 74011, at n. 2 (E.D. Mo. Jan 7, 2022) (dismissal was more appropriate than transfer where the *pro se* plaintiff did not utilize a Court-provided form, had not paid the Court filing fee, and where the factual allegations were devoid of facts to state a claim for relief); *Dinkins v. U.S. Marshals*, 2018 WL 10215876, at *4 (E.D. Mo. Sept. 20, 2018) (dismissal was appropriate where the plaintiff's complaint was so difficult to understand that the Court could not determine the nature of the plaintiff's claim).  Here, by contrast, even if Defendants ultimately demonstrate that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6), Plaintiff's pleading is not so insufficient on its face that transfer of the action to be adjudicated in Wisconsin is not in the interest of justice.

[5] Plaintiff notes that Defendants reside in counties that are encompassed by the Green Bay Division of the Eastern District of Wisconsin.  Doc. [56] at n. 1.  Defendants do not dispute that.  Doc. [57].  Therefore, the Court will transfer the case to the Green Bay Division.

8